## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BENYALE DAVIS** | **CIVIL ACTION** |
| **VERSUS** | **NO.  11-0712** |
| **HOWARD PRINCE, WARDEN** | **SECTION "F"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Benyale Davis, is incarcerated in the Elayn Hunt Correctional

Center in St. Gabriel, Louisiana.[2]  Davis was charged by bill of information in Orleans

Parish with possession of crack cocaine with intent to distribute.[3]

The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case

in relevant part as follows:

> Officer Octavia Baldassaro, Jr. testified that on the night of November 29,
> 2003, he was assigned to the special operations division and was working with
> Officer Ronny Stevens, his partner.  Officer Baldassaro further testified that he
> recalled arresting the defendant and described the events at length.  Specifically,
> Officer Baldassaro stated that he and his partner were on patrol in their police
> vehicle, traveling lake bound on Bienville Street.  Officer Baldassaro testified that
> the reason he and Officer Stevens were on patrol in this area was because of an
> increase in crime associated with narcotics trafficking.  As for the defendant,
> Officer Baldassaro testified that he and his partner first observed Davis when their
> police vehicle was approximately thirty feet away from Bienville's intersection
> with North Gayoso Street.  In particular, Officer Baldassaro testified that he
> witnessed a gray four-door vehicle disregard the stop sign at the intersection of
> Bienville and North Gayoso streets and turn right onto Bienville Street.
>
> Officer Baldassaro stated that he and his partner decided to initiate a traffic
> stop.   Accordingly, Officer Stevens activated the car's lights and sirens.
> However, the driver of the gray vehicle, later identified as the defendant, kept
> driving for two blocks before he pulled over in the 3300 block of Bienville Street.
> Officer Baldassaro testified that after the gray vehicle pulled over he and Officer
> Stevens exited their vehicle.  Officer Stevens then approached the driver's side
> of the gray vehicle while Officer Baldassaro approached the passenger side.
> Officer Baldassaro testified at trial that as he approached the vehicle he noticed
> the defendant leaning forward towards the vehicle's steering wheel and looking
> over his left shoulder at Officer Stevens.  Officer Baldassaro also noticed that
> there was a passenger in the vehicle, later identified as Ms. O'Dwyer Fluker.
> Officer Baldassaro then heard Officer Stevens ask the defendant to get out of the

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 5, Bill of Information, 5/13/04.

vehicle.  As the defendant was stepping out of the vehicle, Officer Baldassaro opened the passenger side door and observed what he thought was a piece of crack cocaine sitting on the driver's seat.  Officer Baldassaro then ordered Ms. Fluker to place her hands on the vehicle's dashboard while he walked around to the driver's side of the vehicle.  Officer Stevens then asked Officer Baldassaro to examine the area around the vehicle's steering wheel where he had observed the defendant leaning.  Officer Baldassaro stated that as he looked into the vehicle he could see that the dashboard was composed of two pieces and that the lower half was loose and hanging down.  He looked into the gap between the two sections of dashboard and noticed a plastic bag.  Officer Baldassaro removed the bag and saw that it contained numerous pieces of what he believed to be crack cocaine. The State introduced the plastic bag and its contents into evidence at trial as State's exhibit 1.

Officer Baldassaro then told Officer Stevens about his discovery, and Officer Stevens then handcuffed defendant and advised him of his rights and the reason for his arrest.  Officer Baldassaro testified that he then went back to the passenger side of the vehicle and asked Ms. Fluker to step out of the car and sit on the curb.  Officer Baldassaro then entered the vehicle's glove box to retrieve the registration and insurance papers.  However, Officer Baldassaro found one thousand dollars in U.S. currency stashed in the glove box.  The State introduced the currency found inside the glove compartment as State's exhibit 2.  Moreover, Office Baldassaro also noted that Officer Stevens found six hundred and seven dollars in U.S. currency on defendant's person.  Further, Officer Baldassaro stated that he issued citations to the defendant for disregarding a stop sign and driving on a suspended license.  The State introduced the citations as State's exhibit 3. Additionally, Officer Baldassaro testified that because of the amount of drugs found in the defendant's vehicle he and Officer Stevens decided to ask for a K-9 unit to come out and search the vehicle.  Officer Baldassaro stated that the K-9 unit found no additional narcotics in the vehicle.  Finally, Officer Baldassaro testified that the defendant was transported to lockup after the K-9 unit's fruitless search.

The State also called Officer Ronny Stevens as a witness at trial.  Officer Stevens testified that at the time of the defendant's arrest he was assigned to Special Operations and partnered with Officer Baldassaro.  Officer Stevens testified that he recalled arresting the defendant in the 3300 block of Bienville Street on the night of November 29, 2003.  Specifically, Officer Stevens testified that he and Officer Baldassaro were patrolling in their marked police unit and traveling in a lake-bound direction on Bienville Street.  Stevens further stated that as they approached Bienville's intersection with North Gayoso Street they noticed a four door gray vehicle disregard a stop sign and turn off of North Gayoso onto Bienville directly in front of their police unit.  Officer Stevens testified that they

3

turned on the unit's lights and sirens and pulled defendant's vehicle over in the 3300 block of Bienville.

Officer Stevens stated that after the defendant's car pulled over, he exited the police unit and approached the driver's side of the defendant's vehicle. Officer Stevens stated that as he reached the window he observed the driver leaning forward in the driver's seat with his left hand reaching up underneath the dashboard towards the area near the vehicle's gas and break pedals. Officer Stevens testified that based upon his experience he concluded that the defendant was attempting to conceal something underneath the dashboard. Accordingly, Officer Stevens ordered the defendant out of his vehicle at this time. Officer Stevens noted that Officer Baldassaro noticed what appeared to be crack cocaine inside the passenger compartment shortly after the defendant exited the vehicle. Immediately thereafter, Officer Stevens placed the defendant under arrest and conducted a pat down search of defendant's person. Officer Stevens noted that the search turned up six hundred and seven dollars in U.S. currency. Officer Stevens stated that in addition to the currency found on defendant's person, Officer Baldassaro also found one thousand dollars in U.S. currency inside the vehicle's glove compartment.

The State also called John Frederick Palm, a criminalist with the New Orleans Police Department, to testify at trial. The State tendered Officer Palm as an expert in the analysis and identification of narcotics, and the defense stipulated to Officer Palm's expertise. Officer Palm first identified State's Exhibit five as the crime lab report he prepared in connection with this case. Further, Officer Palm identified State's Exhibit one as the evidence analyzed in connection with his report. Officer Palm explained that in connection with the present case he was given one loose rock like substance and one plastic bag containing fourteen smaller plastic bags, each holding a rock like substance, as well as an additional plastic bag containing four smaller plastic bags containing rock like substances. Officer Palm testified that each of the rock like substances tested positive for cocaine.

Finally, the defendant called Ms. O'Dwyer Fluker to testify as a witness in his defense. Ms. Fluker testified that at the time of the incident she and the defendant were dating. Specifically, Ms. Fluker stated that she drove her car to meet the defendant, who was in his vehicle, on North Miro between Bienville and Iberville streets. After meeting the defendant, Fluker then got into the defendant's car, and the two decided to take a drive out towards the lake. After turning onto Bienville, Fluker and the defendant pulled over onto Bienville to speak with a friend of the defendant's. Fluker stated that after speaking with the friend they again pulled out onto Bienville and were pulled over by the police within seconds. Fluker stated that the officers then approached the defendant's vehicle and ordered her and Fluker to exit the vehicle. Fluker testified that the officers allowed her to sit on the curb while they patted the defendant down. Fluker then

4

noted that after finding cash on the defendant, the officers began to pepper the defendant with questions as to the origin of the cash. According to Fluker, the defendant stated that he earned the money from washing cars. However, Fluker noted that the police would not accept the defendant's explanation and continued to question the defendant.

Fluker noted that at this point the defendant became physically ill and vomited. Fluker stated that the officers then searched her but found nothing. Further, Fluker testified that the officers then started to search the defendant's vehicle. Fluker stated that after a while she heard one of the officers ask the defendant about a rock of crack cocaine on the passenger seat. Fluker noted that later one of the officers came out of the vehicle with something in his hand. Fluker testified that at no time while she was in the defendant's vehicle did she see any cocaine inside the vehicle. Moreover, Fluker testified that she never witnessed a broken dashboard or defendant trying to hide some item underneath the dashboard. On cross-examination, Fluker admitted that she did not know whether defendant had crack cocaine in the vehicle. Rather, Fluker clarified her testimony by stating that if the defendant had crack cocaine in the vehicle it was not visible to her. After Fluker left the stand, both sides rested their respective cases. Further, after closing arguments, jury instructions, and deliberation, the jury returned with a verdict finding the defendant guilty of possession of narcotics with an intent to distribute.

State v. Davis, 958 So.2d 713, 715-18 (La. App. 4th Cir. 2007); State Record Volume 5 of 5, Louisiana Fourth Circuit Opinion, 2006-KA-1330, pages 2-7, April 25, 2007.

Davis was tried to a jury on June 15, 2005, and he was found guilty as charged.[4] On January 30, 2006, the state trial court held a hearing on the State's multiple bill, and adjudicated Davis to be a second offender.[5] The court sentenced him as a multiple offender to serve 30 years, with the first two years to be served without benefit of parole,

---

[4]St. Rec. Vol. 1 of 5, Trial Minutes, 6/15/05; Jury Verdict, 6/15/05; St. Rec. Vol. 4 of 5, Trial Transcript, p. 67, 6/15/05.

[5]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 1/30/06; Multiple Bill, 6/20/05; St. Rec. Vol. 5 of 5, Multiple Bill Hearing Transcript, p. 11, 1/30/06.

probation, or suspension of sentence.[6]  The court also denied counsel's oral motion to reconsider the sentence.[7]

On direct appeal, Davis's counsel argued that the evidence was insufficient to support the verdict.[8]  On April 25, 2007, the Louisiana Fourth Circuit affirmed Davis's conviction and sentence, finding no merit to the claim.[9]

On December 14, 2007, the Louisiana Supreme Court granted in part Davis's writ application to amend the 30-year sentence as a second offender to be served without benefit of parole, probation or suspension of sentence for its entirety.[10]  The court denied the writ application in all other respects.[11]  Davis's conviction became final 90 days later, on March 13, 2008, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality

---

[6]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 1/30/06; St. Rec. Vol. 5 of 5, Multiple Bill Hearing Transcript, p. 15, 1/30/06.

[7]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 1/30/06; St. Rec. Vol. 5 of 5, Multiple Bill Hearing Transcript, pp. 15-16, 1/30/06.

[8]St. Rec. Vol. 5 of 5, Appeal Brief, 2006-KA-1330, 11/13/06.

[9]State v. Davis, 958 So.2d at 713; St. Rec. Vol. 5 of 5, 4th Cir. Opinion, 2006-KA-1330, 4/25/07.

[10]State v. Davis, 970 So.2d 982, 983 (La. 2007); St. Rec. Vol. 2 of 5, La. S. Ct. Order, 2007-KO-1208, 12/14/07; La. S. Ct. Writ Application, 07-KO-1208, 6/7/07 (postal metered 5/23/07, dated 5/21/07); St. Rec. Vol. 5 of 5, La. S. Ct. Letter, 2007-KO-1208, 6/7/07 (showing postal meter 5/23/07).

[11]Id.

determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On June 10, 2008, Davis submitted to the state trial court an application for post-conviction relief in which he asserted four grounds for relief:[12] (1) He was denied effective assistance of counsel because his counsel did not effectively challenge the illegal stop. (2) He was denied due process because the weight of the evidence was insufficient to support the verdict. (3) He was denied effective assistance of counsel because his counsel failed to call an alibi witness to testify at trial. (4) He was denied effective assistance of counsel at the habitual offender proceeding.  On July 25, 2008, the state trial court denied the application, finding that Davis failed to brief his claims as required by La. Code Crim. P. art. 930.2.[13]  Davis did not seek review of this order.

Davis later submitted a second application for post-conviction relief on February 19, 2009, in which he asserted five grounds for relief:[14] (1) Counsel was ineffective because he failed to elicit adequate information from the officers effectively to challenge the illegal stop. (2) He was denied due process because the weight of the evidence was insufficient to support the verdict. (3) Counsel failed to let petitioner testify. (4) Counsel

---

[12]St. Rec. Vol. 1 of 5, Application for Post Conviction Relief, dated 6/10/08.

[13]St. Rec. Vol. 1 of 5, Trial Court Judgment, 7/25/08.

[14]St. Rec. Vol. 3 of 5, Amended and Supplemental Application for Post-Conviction Relief, dated 2/19/09.

7

was ineffective at the multiple offender proceeding. (5) Counsel did not challenge the expert's qualifications.

On March 12, 2009, the state trial court denied relief, finding no merit in the ineffective assistance of counsel at trial claims.  The court also refused to reconsider the insufficient evidence claim, finding it barred under La. Code Crim. P. art. 930.4, because it was heard on direct appeal. The court also refused to consider claim of ineffective assistance of counsel at the multiple offender proceeding because the claim was barred from post-conviction review, citing State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996).[15]   On October 21, 2009, the court denied Davis's motion to reconsider that ruling.[16]

Davis thereafter sought review of the trial court's ruling in the Louisiana Fourth Circuit.[17]  The court denied the application on December 16, 2009, finding no error in the state trial court's March 12, 2009, ruling.[18] On January 14, 2011, the Louisiana Supreme

---

[15]In Melinie, the Louisiana Supreme Court ruled that claims of errors in sentencing should be raised on direct appeal and are not proper grounds for post-conviction relief. Melinie, 665 So. 2d at 1172 (citing La. Code Crim. P. art. 930.3); State ex rel. Glover v. State, 660 So. 2d 1189, 1194, 1196-98 (La. 1995); State v. Gibbs, 620 So. 2d 296 (La. App. 3d Cir. 1993), abrogated in part on other grounds by State ex rel. Olivieri v. State, 779 So. 2d 735 (La. 2001)).

[16]St. Rec. Vol. 1 of 5, Trial Court Judgment, 10/21/09; Motion for Reconsideration, dated 3/19/09.

[17]See, St. Rec. Vol. 3 of 5, Copy of 4th Cir. Writ Application, unfiled/undated.

[18]St. Rec. Vol. 3 of 5, 4th Cir. Order, 2009-K-1581, 12/16/09.

Court also denied without stated reasons Davis's related writ application asserting the same claims.[19]

## II.   FEDERAL HABEAS PETITION

On March 31, 2011, the clerk of this court filed Davis's petition for federal habeas corpus relief, in which he asserts the following claims:[20] (1) He received ineffective assistance of counsel because his counsel failed to investigate an alleged illegal stop and search. (2) He was denied due process because the weight of the evidence was insufficient to support the verdict. (3) He was denied effective assistance of counsel because his counsel refused to allow him to testify on his own behalf and stipulated to the expertise of the alleged analyst. (4) He was denied effective assistance of counsel because his counsel failed to move for a continuance of the multiple offender hearing.

The State filed a response in opposition to Davis's petition conceding that the petition was filed timely, but arguing that Davis is not entitled to relief.[21]  On the issue of exhaustion, the State contends that Davis's first and third claims were exhausted in the state courts and can be addressed this federal court.

---

[19]State ex rel. Davis v. State, 52 So.3d 897 (La. 2011); St. Rec. Vol. 3 of 5, La. S. Ct. Order, 2010-KH-0202, 1/14/11; La. S. Ct. Writ Application, 10-KH-0202, 1/26/10 (postal metered 12/30/09, dated 12/29/10).

[20]Rec. Doc. No. 1.

[21]Rec. Doc. No. 9.

The State further recognizes that Davis's second claim, challenging the <u>weight</u> of the evidence (as opposed to its <u>sufficiency</u>), was barred from review on post-conviction under La. Code Crim. P. art. 930.4 as repetitive of the claim raised in his direct appeal. The State concedes, however, that Louisiana law recognizes a distinction between weight and sufficiency of the evidence, an issue overlooked in the state trial court's ruling. The State recognizes, therefore, that the state courts should have considered the claim challenging the weight of the evidence rather than dismiss it as repetitive of the sufficiency of the evidence claim. The State suggests, however, that the weight of the evidence claim presented in this court is not exhausted, since none of the state courts addressed the substance of Davis's arguments. The State argues, nevertheless, that the claim should be denied as meritless on federal review without further exhaustion, citing <u>Mercadel v. Cain</u>, 179 F.3d 271, 276 (5th Cir. 1999) and 28 U.S.C. § 2254(b)(2).

The State further argues that Davis's fourth claim is procedurally barred from federal review.

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[22] and

---

[22]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir.

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

applies to Davis's petition, which, for reasons discussed below, is deemed filed in this

federal court on February 27, 2011.[23]

The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether the claims raised by the petitioner were adjudicated on

the merits in state court; i.e., the petitioner must have exhausted state court remedies and

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State concedes the timeliness of the petition and exhaustion of the

first and third claims.  The State also waives the exhaustion requirement as to the second

claim and urges that the fourth claim is in procedural default.  I find that Davis is not

entitled to relief on any of his claims for the following reasons.

---

1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Davis's federal petition on March 31, 2011, when the filing fee was paid.  Davis's signature on the petition is dated February 27, 2011.  This is the earliest date on which he could have delivered the set of pleadings to prison officials for mailing.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

IV.   PROCEDURAL DEFAULT (CLAIM NO. 4)

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

As to Davis's fourth claim, that counsel was ineffective during the multiple offender proceeding, the record demonstrates that the last reasoned decision was the state trial court's, which barred review of the claim pursuant to State ex rel. Melinie, 665 So. 2d at 1172.  This bar indicates that Davis's fourth claim, now before this court, was

inappropriate for post-conviction review and procedurally impermissible under Louisiana law.

(1)   <u>INDEPENDENT AND ADEQUATE</u>

For the foregoing state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.   A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  <u>Amos</u>, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  <u>Walker v. Martin</u>, __U.S.__, 131 S.Ct. 1120, 1127 (2011); <u>Glover</u>, 128 F.3d at 902.  A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." <u>Beard v. Kindler</u>, __U.S.__, 130 S. Ct. 612, 618 (2009).  The question of the adequacy of a state procedural bar is itself a federal question.  <u>Beard</u>, 130 S. Ct. at 617 (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002)).

In its March 12, 2009, order dismissing Davis's post-conviction claim, the state trial court relied upon <u>State ex rel. Melinie</u>, which indicates that the claims were barred from review because they were not cognizable on post-conviction review.  This court has repeatedly held that <u>State ex rel. Melinie</u> and La. Code Crim. P. art. 930.3 upon which it is based are independent and adequate state grounds for dismissal barring federal

13

habeas corpus review.  <u>See, e.g.</u>, <u>Neal v. Kaylo</u>, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (Article 930.3 and <u>Melinie</u> are independent and adequate); <u>Leonard v. Hubert</u>, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); <u>Marshall v. Hubert</u>, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same); <u>Ardis v. Cain</u>, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999) (Berrigan, J.) (same).  Similarly, I find that the bar imposed under <u>State ex rel. Melinie</u> is an independent and adequate to bar review of the merits of Davis's fourth claim in the instant habeas petition.

(2)   <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  <u>Id.</u> (citing <u>Coleman</u>, 501 U.S. at 731-32); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  <u>Id</u>. at 486.

14

In this case, Davis has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  My review of the record does not support a finding that any factor external to the defense prevented Davis from raising these claims in a procedurally proper manner.  The record also does not reflect any action or inaction by the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

(3)   FUNDAMENTAL MISCARRIAGE OF JUSTICE

Davis may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's

15

guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  Glover, 128 F.3d at 903.

Davis presents no argument and the record contains nothing suggesting his actual innocence on the underlying conviction.  His claims address alleged procedural failings in the underlying criminal and habitual offender proceedings, not his actual innocence. He presents no evidence or argument of innocence that was not already presented to and resolved by the jury and the state courts against him.

For these reasons, Davis has failed to overcome the procedural bar to his claims, and his fourth claim of ineffective assistance of counsel at the multiple offender proceeding should be dismissed with prejudice for that reason.

V.     MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from

> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

The AEDPA's deferential standard of review applies only to claims adjudicated

on the merits by the state courts.  28 U.S.C. § 2254(d).  As mentioned previously,

petitioner presents claims in this court that were not substantively addressed by the state

courts but which will be considered here.  With respect to claims that are not adjudicated

on the merits in state court, the deferential AEDPA standards of review do not apply.

Henderson v. Cockrell, 333 F.3d 592, 597 (5th Cir. 2003).  Instead, the federal courts

review those claims under the pre-AEDPA de novo standards of review.  Id., at 598 (citing Jones v. Jones, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); see also, Carty v. Thaler, 583 F.3d 244, 253 (5th Cir. 2009).  This court will consider de novo those claims not substantively addressed by the state courts.

VI.   WEIGHT OF EVIDENCE (CLAIM NO. 2)

Davis alleges that the weight of the evidence was not sufficient to prove intent to distribute cocaine.  He is clear that he is not challenging the sufficiency of the evidence, but instead its weight in light of the factors required to prove intent to distribute under state law.  He argues that where there is "conflicting evidence," resolution of a question of fact "requires a determination of credibility of the witness and is a matter of weight of the evidence, and not sufficiency."[24]  He suggests that, in light of the weakness of the State's case, the Louisiana appellate court was required under Louisiana law to assess the weight of the evidence and sit as a "thirteenth juror" to resolve the conflicting evidence.[25]  Construed broadly, his argument appears to be that the failure of the Louisiana courts to assess the weight of the evidence on appeal denied him due process.

---

[24]Rec. Doc. No. 1-1, p. 11, citing Tibbs v. Florida, 457 U.S. 31 (1982).

[25]Id., citing Johnson v. Louisiana, 406 U.S. 356, 401-02 (1972).

This claim was presented by Davis on post-conviction review in the state trial court.  As outlined above, the court declined review, finding the claim repetitive of the insufficient evidence claim raised on direct appeal.  This was the last reasoned decision on the issue. The State, in its response, requests that this court look beyond the procedural bar and Davis's technical failure to exhaust, and deny relief on Davis's claim for failure to present a cognizable federal claim.  The claim is reviewed de novo.

As an initial matter, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law). Thus, whether Louisiana law required the Louisiana appellate court to conduct a review of the weight of the evidence is not the issue to be considered here.  This court's analysis must focus instead on due process considerations. Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986).

The due process standard requires this court to consider "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout, 131 S. Ct. at 861 (citing Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).  Due process requires, therefore, that the court grant habeas relief only when the errors of the state court make the underlying proceeding fundamentally unfair. Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986).

In this case, Davis has failed to point to any state or federal law that would require the state courts to assess the weight of the evidence on appellate or post-conviction review of the verdict in his case. Instead, Louisiana law, like federal law, provides that review of the evidence in support of a verdict is governed by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307 (1979). This standard of appellate review, also enacted in La. Code Crim. P. art. 821, is whether the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Brown, 907 So.2d 1, 18 (La. 2005); State v. Hawkins, 688 So.2d 473, 479 (La. 1997).

Under Louisiana law, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Hano, 938 So.2d 181, 186 (La. App. 1st Cir. 2006). Under the Jackson standard, however, "a reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La. 1992); State v. Smith, 661 So.2d 442, 443 (La. 1995). The Jackson standard of review is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt, not credibility. State v. Hanno, 938 So.2d at 186.

This task is left to the trier-of-fact at trial, who is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir. 1984).  Furthermore, the fact that the jury did not believe a defense theory and instead accepted the evidence presented by the prosecution as true does not call into question culpability findings made by the jury. See Schlup v. Delo, 513 U.S. 298, 330 (1995) (under Jackson assessment of credibility of witnesses generally beyond scope of review); see also, United States v. Martinez, 975 F.2d 159, 161 (5th Cir. 1992) (weight and credibility of evidence within sole province of jury).  The jury's credibility choices are not to be disturbed.

To protect Davis's due process interests, the state courts needed only to comply with the standards set forth by the United States Supreme Court in Jackson.  That standard was applied and followed in the review conducted by the Louisiana Fourth Circuit on direct appeal, the outcome of which is not challenged here.

The same Jackson standard of review applies to a federal court on habeas review. The habeas court can look only to the sufficiency of the evidence to determine whether the evidence presented, viewed in a light most favorable to the State, would have permitted a rational trier of fact to find the petitioner guilty of the crime charged beyond a reasonable doubt.  Jackson, 443 U S. at 319; West v. Johnson, 92 F.3d 1385, 1393 (5th Cir. 1996).  Review under Jackson does not include review of the weight of the evidence or the credibility of the witnesses.  United States v. Young, 107 Fed. Appx. 442, 443 (5th

Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993).  Instead, all credibility choices and conflicting inferences are resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).  This familiar standard gives full recognition to the responsibility of the fact-finder to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the facts.  Jackson, 443 U.S. at 319.  The habeas court is not authorized to substitute its interpretation of the evidence or the credibility of witnesses for that of the fact-finder.  Weeks v. Scott, 55 F 3d 1059, 1062 (5th Cir. 1995);  Gibson v. Collins, 947 F.2d 780, 783 (5th Cir. 1991) (The fact that the evidence may give support to the defendant's theory of innocence does not warrant the grant of habeas relief).  Therefore, to the extent Davis asks this court to review the weight of the evidence, his request is not cognizable on habeas review.

In sum, Davis has failed to establish a basis for this court to review his claim that the weight of the evidence at his trial was not sufficient to support the verdict.  He has not shown that the state courts denied him due process in failing to review his weight of the evidence claim, and he has not cited any Supreme Court precedent that would entitle him to that review.  This court, sitting on habeas review, also has no basis for and is prohibited form reassessing the weight of the evidence at his state criminal trial.  For these reasons, Davis has not demonstrated that he is entitled to review of his claim or federal habeas corpus relief.

VII.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NOS. 1, 3)

Davis alleges that his counsel was ineffective because he failed to investigate the allegedly illegal stop and search which led to his arrest and conviction, refused to allow him to testify on his own behalf, and stipulated to the expertise of the chemical analyst. The state courts denied him relief on these claims on post-conviction review.  In the last reasoned decision, the state trial court determined that counsel's trial decisions could not be second-guessed in hindsight, and the success of his strategy choices was not a proper basis to judge his performance.[26]

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant

_____

[26]St. Rec. Vol. 3 of 5, Trial Court Judgment, 3/12/09.

must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S.

at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th

Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that,

under Strickland, "[t]he question is whether an attorney's representation amounted to

incompetence under prevailing professional norms,  not whether it deviated from best

practices or most common custom."  Harrington v. Richter, __ U.S. __, 131 S.Ct. 770,

788 (2011).  The Harrington Court went on to recognize the high level of deference owed

to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review is doubly so.  The
> Strickland standard is a general one, so the range of reasonable applications
> is substantial.  Federal habeas courts must guard against the danger of
> equating unreasonableness under Strickland with unreasonableness under
> § 2254(d).  When § 2254(d) applies, the question is not whether counsel's
> actions were reasonable.  The question is whether there is any reasonable
> argument that counsel satisfied Strickland's deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within

the wide range of reasonable professional assistance because it is all too easy to conclude

that a particular act or omission of counsel was unreasonable in the harsh light of

hindsight."  Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).  This court must

apply the "strong presumption" that counsel's strategy and defense tactics fall "within

the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 690.

Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

A.   FAILURE TO INVESTIGATE THE ILLEGAL STOP AND SEARCH

Davis alleges that his trial counsel failed to investigate the scene of the traffic stop to collect evidence to show that the stop and search of the vehicle were unlawful. He complains that counsel knew before trial that there were no stop signs on Bienville Street, where officers claim he ran a stop sign. He argues that counsel also knew that the dashboard in the car was not broken to expose the cocaine, as suggested by the police officers in support of the "plain view" exception for the search. He further argues that counsel failed to gather photographs and evidence to support the testimony of his girlfriend, O'Dwyer Fluker, that there was no stop sign, the dashboard was not broken, and the car driver's window was tinted. He complains that counsel instead chose to question the witnesses and "leave the jury to decide if the police officers or petitioner's

girlfriend were telling the truth."[27]  Alternatively, Davis contends that the evidence did not support an investigatory stop since there was no testimony or evidence to create a reasonable suspicion that petitioner was engaged in criminal activity.

To the extent Davis is attempting indirectly to challenge the state courts' findings regarding validity of his Fourth Amendment claims, such claims are barred from review in federal court, where, as here, the petitioner was given a full and fair opportunity to litigate those claims in the state courts.  Stone v. Powell, 428 U.S. 465 (1976).  However, I will consider the evidence to the extent necessary to assess counsel's performance under Strickland.

Probable cause does not require definite knowledge. "Probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983).  Probable cause only entails "the probability, and not a prima facie showing, of criminal activity." Id. at 235 (citing Spinelli v. United States, 393 U.S. 410, 419 (1969) (internal quotes omitted).  The determination of probable cause is given "great deference by reviewing courts." Gates 462 U.S. at 236 (quoting Spinelli, 393 U.S. at 419).  Given this deferential standard, counsel's decisions whether to make certain arguments regarding an erroneous determination on probable cause are also due

_____

[27]Rec. Doc. No. 1-1, p. 10.

deference under the Strickland standard, unless they clearly fall below an objective standard of reasonableness.

Furthermore, a petitioner like Davis who asserts a failure to investigate must allege with specificity what the investigation would have revealed and how that may have altered the outcome of the trial. Gregory v. Thaler, 601 F.3d 347, 352 (5th Cir. 2010); Barnes v. Johnson, 184 F.3d 816, 1999 WL 499655, at *6 (5th Cir. 1999) (quoting United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Black v. Collins, 962 F.2d 394, 401 (5th Cir. 1992) (internal quotations and citation omitted).

Davis has not demonstrated that his counsel failed to investigate the stop or that his performance in this regard altered the outcome of the trial. He only speculates in hindsight that additional evidence may have swayed the jury to believe the defense rather than credit the officers about the stop. The is not the standard by which the performance of counsel must be judged.

Contrary to his suggestion, Davis was not stopped for running a stop sign on Bienville Street, where he claims there is no stop sign. According to the evidence, he

was stopped for running a stop sign when he turned onto Bienville from Gayoso Street. He does not suggest or allege that there was no stop sign on the Gayoso corner.

Nevertheless, review of counsel's performance at the suppression hearing and trial indicates that counsel in fact questioned the officers about the existence of a stop sign at the intersection and the details of the stop, including the description of the car, in an apparent effort to raise doubt about the legitimacy of the stop and search.  At the hearing, counsel extensively questioned Officer Stephens about every detail of the stop and search of the vehicle.[28]  These questions included whether there was a stop sign at the specific corner of Gayoso and Bienville Streets.  He also asked the officer whether a stop sign on Gayoso could have been hidden by trees, which the officer denied.

In response to other questions, the officer also testified that the car windows were lightly tinted, although he and Officer Baldassaro both could see into the car when Davis leaned forward to place the cocaine in the dash near the steering column.  At the conclusion of that hearing, the trial court found probable cause for the stop and denied the motions to suppress and for probable cause.

Counsel repeated his efforts at trial by questioning both officers Baldassaro and Stephens about the existence of a stop sign on the Gayoso corner, the visibility of the

---

[28]St. Rec. Vol. 4 of 5, Motion Hearing Transcript, pp. 6-19.

stop sign, the tinting on the car windows and the broken dashboard.[29]  Counsel in fact used the <u>lack</u> of pictures of the car in an attempt to raise doubt as to whether the car was actually in the condition described by the officers.[30]

 As indicated by Davis, the record does not reflect that counsel presented photographic evidence related to the stop sign and car.  As discussed above, however, counsel used the lack of pictures in an effort to discredit the officers.  Counsel's decision not to present other evidence, assuming it even existed, was within the ambit of sound trial strategy, where counsel chose to create and leave some question or doubt lingering in the minds of the jurors.  Counsel's trial tactics and strategy in this regard do not form the basis of constitutionally ineffective assistance of counsel.  <u>Richards v. Quarterman</u>, 566 F.3d 553, 564 (5th Cir. 2009).  Davis cannot overcome the strong presumption that his counsel's decision not to present photographic evidence, if any, was a reasonable strategic choice.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689 (counsel must have "wide latitude" in making tactical decisions).

 I also note that Davis has not presented to the state courts or this court any evidence, photographic or otherwise, which might have been used by counsel to prove that there was no stop sign or that the car windows had dark tinting or that the dashboard

---

[29]<u>See, e.g.</u>, St. Rec. Vol. 4 of 5, Trial Transcript, pp. 14-16 (Baldassaro), pp. 39-40 (Stephens), 6/15/05.

[30]<u>Id.</u>, p. 31 (Baldassaro).

was undamaged.  His arguments that such evidence exists is pure conjecture, and there is no showing that counsel performed below constitutional standards in this regard.

As discussed previously, it was well within the province of the jury to choose to believe the police officers over Davis's girlfriend and despite counsel's efforts to raise doubt about the officers' veracity.  The jury's decision as to which witnesses were being truthful in no way demonstrates constitutional inadequacy in counsel's attempt to persuade them otherwise.  Nixon v. Epps, 405 F.3d 318, 324 (5th Cir. 2005).

For these reasons, Davis has failed to establish that his counsel acted deficiently or prejudicially.  The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  Davis is not entitled to relief on this claim.

B.   REFUSAL TO ALLOW DAVIS TO TESTIFY

Davis argues that his counsel refused to allow him to testify on his own behalf. He claims that he could have shed light on the description and condition of his car, the lack of a stop sign and the lack of evidence of his intent to distribute cocaine.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments.  Rock v. Ark., 483 U.S. 44, 49 (1987); Bower v. Quarterman, 497 F.3d 459, 473 (5th Cir. 2007); Sayre v. Anderson, 238 F.3d 631, 634 (5th Cir. 2001); Jordan v. Hargett, 34 F.3d 310, 312 (5th Cir.1994).  When, as here, the petitioner alleges that his counsel, not the court or the State, prevented him from testifying, the United States Court of Appeals for the Fifth Circuit has held that the

32

"'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'"

Sayre, 238 F.3d at 634 (quoting U.S. v. Brown, 217 F.3d 247, 258-59 (5th Cir. 2000)).

A criminal defendant can only waive his right to testify if that waiver is knowing, intelligent and voluntary. Bower, 497 F.3d at 473 (citing Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997)). A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'" Emery, 139 F.3d at 198 (quoting U.S. v. Teague, 908 F.2d 752, 759 (11th Cir. 1990)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." Turcios v. Dretke, No. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991)); accord Jones v. Cain, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); Davis v. Quarterman, No. H-06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007).

The Underwood court specifically noted the potential problems that were bound to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof. Underwood, 939 F.2d at 475-76. Adopting the reasoning in Siciliano v. Vose, 834 F.2d 29, 31 (1st Cir. 1987), the Underwood court recognized that such an assertion, even if made under oath,

33

> is insufficient to require a hearing or other action on his claim that his right
> to testify in his own defense was denied him.  It just is too facile a tactic to
> be allowed to succeed.  Some greater particularity is necessary – and also
> we think some substantiation is necessary, such as an affidavit from the
> lawyer who allegedly forbade his client to testify – to give the claim
> sufficient credibility to warrant a further investment of judicial resources
> in determining the truth of the claim.

Underwood, 939 F.2d at 475-76; accord Gross v. Knight, 560 F.3d 668, 672 (7th Cir.),

cert. denied, 130 S. Ct. 402 (2009).

Citing Underwood, the Fifth Circuit has

> observed that allowing a bare assertion of a right-to-testify violation to
> precipitate the further investment of judicial resources is problematic.  See
> [Underwood, 939 F.2d at 476] . . . (stating that a conclusory assertion by
> a defendant that his right to testify was denied him is insufficient to require
> a hearing because "[i]t just is too facile a tactic to be allowed to succeed").
> We agree that there is "a grave practical difficulty in establishing a
> mechanism that will protect a criminal defendant's personal right . . . to
> testify in his own behalf without rendering the criminal process
> unworkable."

U.S. v. Martinez, 181 F.3d 627, 628 (5th Cir. 1999) (quoting Underwood, 939 F.2d at

475).   "While the Fifth Circuit has adopted the general rule of law enunciated in

Underwood . . . , the Court has further opined that [summary] dismissal is inappropriate

unless the habeas petitioner has first been afforded the opportunity to amend his

pleadings to provide the evidence necessary to support his claim."  Savoy v. Cain, No.

06-1744, 2008 WL 276542, at *1 (W.D. La. Jan. 29, 2008) (citing Martinez, 181 F.3d at

629).

In the instant matter, there is no evidence to support Davis's claim that his attorney prevented him from testifying.  Although Davis suggests that he asked to be allowed to testify, he has not presented any evidence to the state courts or to this court that might establish this fact.[31]  Instead, the record shows that Davis must have acquiesced to what appears to have been the sound advice of counsel that he not testify.  The transcript is devoid of any discussion on the record by Davis or his counsel that Davis wished to testify or was advised against it.  Davis's argument, therefore, is in the same posture as that invalidated and rejected in the Underwood case.  There is nothing in this record sufficient to prove any violation of his right to testify.

For these reasons, Davis has not demonstrated any deficiency or prejudice resulting from counsel's advice not to testify under the standards set forth in Strickland. There is no violation of the right to testify where the defendant merely acquiesced during trial to his attorney's recommendation that he not testify, even if the defendant decides later, in hindsight, that he should have testified.  Jordan, 34 F.3d at 312.

Even assuming that counsel did in fact advise Davis not to testify, the record demonstrates that such advice was based on legitimate grounds.  The assertions Davis

_____

[31]Davis has had ample time and opportunity, both while his post-conviction proceedings were pending in state courts and during the pendency of this federal habeas petition, to pursue or file evidence to support his suggestion that counsel refused to let him testify. He has failed to do so, or even to suggest that it is conceivable that he could obtain such evidence. Under these circumstances, it appears that no further opportunity to obtain such evidence need be provided by this court, as suggested in the Martinez and Savoy decisions cited and discussed above. Davis can use the 14-day objection period following the entry of this report and recommendation to file such evidence if he has any, before his claim is dismissed with prejudice.

now makes were addressed by other testimony and evidence at trial.  Nothing in his proposed testimony differs from the testimony elicited from his girlfriend.  He simply suggests that he would have been a better source for the same, repetitive information.

In addition, placing him on the stand would have exposed him to cross-examination by the prosecutor regarding the large amount of money and cocaine found in the car.  He also would have been subject to questioning about his character, including any prior criminal convictions of the type that resulted in his subsequent multiple offender adjudication, which would have diminished his credibility.

The prejudice posed by the likely cross-examination outweighed any benefit his unsubstantiated testimony could have lent to his defense.  Davis has not demonstrated that, but for counsel's advice not to testify, the outcome of the trial would have been different.  For these reasons, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Strickland.  He is not entitled to relief on this claim.

C.    STIPULATION TO EXPERT'S QUALIFICATIONS

Davis complains that his counsel erred in stipulating to the testimony of the State's expert, Officer John Palm Jr., without challenging his expertise under Daubert v. Merill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1983).  Construed broadly, Davis argues that counsel stipulated to his expertise, which allowed him to testify without requiring the

36

State to present evidence of his qualifications to render an opinion and the reliability of his testimony.

Palm testified that he was then employed as a criminalist for the New Orleans Police Department and had been so employed for 34 years.[32]  He also indicated that his duties included analysis of suspected narcotic substances.  Palm was offered by the State as an expert in analysis and identification of narcotics.[33]  Davis's counsel agreed to the State's proposed stipulation as to Palm's expertise.  Palm thereafter testified that the rock-like items placed into evidence tested positive for cocaine.[34]  Davis's counsel did not cross-examine Palm.

Davis offers nothing to suggest that Palm was not qualified to give expert testimony regarding the identification of the substance as cocaine based on his 34 years of experience mentioned at trial.  Louisiana case law reveals that Palm has repeatedly been recognized and/or stipulated to as an expert in the analysis of narcotics dating back years before Davis's trial.  See e.g., State v. Graps, 42 So.3d 1066, 1069 (La. App. 4th Cir. 2010) (expert in chemistry and analysis of controlled dangerous substances); State v. White, 22 So.3d 197, 200 (La. App. 4th Cir. 2009) (expert in examination and identification of cocaine); State v. Stewart, 866 So.2d 1016, 1020 (La. App. 5th Cir.

---

[32]St. Rec. Vol. 4 of 5, Trial Transcript, p. 48, 6/15/05.

[33]Id., pp. 48-49.

[34]Id., p. 50.

2004) (expert in drug analysis); <u>State v. Francois</u>, 844 So.2d 1042, 1045 (La. App. 4th Cir. 2003) (stipulated as expert in the field testing and identification of controlled dangerous substances), <u>rev'd on other grounds</u>, 874 So.2d 125 (La. 2004); <u>State v. Rice</u>, 807 So.2d 350, 352 (La. App. 4th Cir. 2002) (expert in testing and analysis of controlled dangerous substances); <u>State v. Briley</u>, 798 So.2d 1191, 1192 (La. App. 4th Cir. 2001) (stipulated as expert in the identification of narcotics); <u>State v. Adams</u>, 779 So.2d 113 (La. App. 4th Cir. 2001) (expert in analysis and identification of controlled dangerous substances); <u>State v. Commodore</u>, 774 So.2d 318, 319 (La. App. 4th Cir. 2000) (expert in analysis and identification of narcotics); <u>State v. Baker</u>, 772 So.2d 225, 227 (La. App. 4th Cir. 2000) (stipulated as expert in identification and analysis of controlled dangerous substances); <u>State v. Boles</u>, 763 So.2d 74, 76 (La. App. 4th Cir. 2000) (stipulated as expert in testing and identification of controlled dangerous substance); <u>State v. Wilson</u>, 758 So.2d 356, 357 (La. App. 4th Cir. 2000) (expert in testing and analysis of controlled dangerous substances); <u>State v. Postell</u>, 735 So.2d 782, 786-87 (La. App. 4th Cir. 1999); <u>State v. Evans</u>, 715 So.2d 695, 696 (La. App. 4th Cir. 1998) (expert in testing for controlled dangerous substances); <u>State v. Scott</u>, 537 So.2d 398, 399-400 (La. App. 4th Cir. 1989) (expert in analysis and identification of controlled dangerous substances including cocaine).  It was wholly reasonable for Davis's experienced attorney not to challenge Palm's long history of testifying as an expert in analyzing narcotics.

Davis has offered no evidence to show that Palm was not a qualified expert or that counsel performed deficiently in stipulating to his expertise in this area. In addition, the stipulation was a concession of facts which the state could have easily established. There was no apparent advantage to Davis for counsel to refuse to enter the stipulation. Where this is true, petitioner has not shown the necessary prejudice to support an ineffective assistance of counsel claim regarding the stipulation. See Berry v. King, 765 F.2d 451, 454-55 (5th Cir. 1985).

As to Davis's argument that his counsel erred under Daubert, this claim is also without merit. In Daubert, the Supreme Court replaced the "general acceptance" standard of expert testimony with a standard that charges the trial court to act as "gatekeeper" ensuring the relevance and reliability of scientific expert testimony. The question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. Butler v. Kitchens Brothers Mfg., 253 Fed. Appx. 395, 397-98 (5th Cir. 2007) (citing Burleson v. Tex. Dept. of Crim. Justice, 393 F.3d 577, 584 (5th Cir. 2004)).

The court's gatekeeping duties, however, are a "preliminary assessment." Daubert, 509 U.S. at 592. Once that testimony is admitted, it is for the jury to resolve the credibility and reliability of the expert's testimony. "'[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" (emphasis in original) Primrose Operating Co. v. Natl. American Ins. Co., 382 F.3d 546,

39

562 (5th Cir. 2004) (quoting United State v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996)).  As this court has reiterated time and again, assessment of the weight of the evidence is for the jury.

The Louisiana Supreme Court has adopted the Daubert analysis, State v. Foret, 628 So.2d 1116, 1121, 1123 (La. 1993), in instances where the methodology used by the expert is being questioned.  Dinett v. Lakeside Hospital, 811 So.2d 116, 119 (La. App. 4th Cir. 2002).  In this case, Palm's testing of the substance and his methodology apparently were not at issue.

Davis does not dispute that the rock-like substances seized were in fact cocaine. Because their was no real dispute over the identity of the substance, Davis cannot demonstrate either deficient performance or prejudice regarding counsel's stipulation to Palm's expertise and the decision not to question his test results or methodology.

The record demonstrates that Palm simply testified that the substance placed into evidence was cocaine.  The stipulation by counsel and his decision not to question Palm were no more than acceptance that Palm's report confirmed the presence of drugs.  There is nothing in the record to demonstrate that counsel's decision to stipulate to his expertise was anything other than sound trial strategy.  Furthermore, "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment."  Ford v. Cockrell, 315 F.

Supp.2d 831, 859 (W.D. Tex. 2004).  Counsel's professional or tactical judgment is not to be questioned in hindsight.

Recognizing the deferential standards set forth above, the state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  Davis is not entitled to relief on this claim.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Benyale Davis for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[35]

New Orleans, Louisiana, this ____28th____ day of September, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[35]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.